## P. & S. TAXI & BAGGAGE CO. et al. v. CAMERON.

No. 28400.   June 7, 1938.

Rehearing Denied June 28, 1938.

 

Ben F. Williams, Homer Cowan, and T. R. Benedum, for plaintiffs in error.

Ben Huey and Paul W. Updegraff, for defendant in error.

RILEY, J. This is an action to recover damages for personal injuries commenced by the defendant in error against the P. & S. Taxicab & Baggage Company and Earl Endicott. The parties will be referred to as in the trial court.

Judgment was for plaintiff, and defendants appeal.

On May 2, 1936, plaintiff, while walking north crossing Main street in the city of Norman, was struck by a cab driven by defendant Earl Endicott, and received the injuries on account of which he sues. The cab was owned by Earl Endicott's father, and was being operated under an arrangement with the defendant P. & S. Taxicab & Baggage Company under which the owner of the cab paid the taxicab company $1.40 per day for telephone and station service. The cab carried on it the sign of the P. & S. Taxicab Company. It appears that when in service the cab was operated the same as other cabs operated by the company. That is, when a call would come in for a cab, the company sent Endicott out in regular turn as the other cabs.

Plaintiff in his petition alleged, in substance, that on May 2, 1936, about 11:50 a. m., he was walking north across Main street, keeping proper watch and with due regard to the traffic on the street at the time and for his own safety; that he had reached and passed the center of Main street and had satisfied himself from observing the traffic approaching from the west that there was no danger from traffic coming from the west, and having passed the center of Main street was directing principal attention to traffic coming from the east; "that while so doing he was struck and knocked down by the taxicab operated by defendant company driven by defendant Earl Endicott from the west toward the east." That defendant Endicott was at the time employed by the defendant taxicab company and was so employed and was at the time acting within the scope of his employment and by and in behalf of his said employer; that said cab was being driven at a high and dangerous rate of speed, in view of the traffic and other conditions existing at the time, at about 35 miles per hour. That such rate of speed was especially dangerous in view of the fact that said cab was then being driven past other cars going in the same direction,

and was being operated to the left or north of the center of the street, that said cab at the time was being driven so as to violate several of the provisions of the ordinance of the city of Norman, which were pleaded, and among other things provided that all vehicles shall be driven in a careful manner and with due regard for the safety and convenience of pedestrians and other vehicles; that no person shall operate a vehicle on the streets recklessly, or while not under control, or at a greater rate of speed than is reasonable and proper, having regard to the width and use of the street and the traffic thereon; driving to the left of the center of the street is prohibited except when necessary to turn to the left in crossing a street or in passing another vehicle headed in the same direction, but in each case the driver must use due care and caution, and "no vehicle shall overtake or pass another at a street intersection, and that no vehicle should be driven on the streets of said city in the business district at a rate of speed of more than 20 miles per hour."

The petition pleads with particularity the injuries received as an oblique fracture of the tibia at about the middle of the upper third of the lower left leg, fracture of the fibula of the lower left leg, a deep scalp wound which penetrated to the skull, severe shock and various bruises and lacerations.

Defendant P. & S. Taxi & Baggage Company filed its separate verified answer consisting of a general denial and a specific denial that Earl Endicott was acting as the agent and servant of the taxicab company, or in the course of his employment with said company, at the time of the alleged collision and injury, and an affirmative allegation that said Endicott was on a mission of his own, en route to his home with his own personal guest.

Defendant Earl Endicott filed his separate verified answer by way of general denial and affirmative allegation to the effect that plaintiff stepped in front of the cab without fault of this defendant and that plaintiff's injury was the result either of an unavoidable accident or was due to his own negligence.

He further pleaded contributory negligence, alleging in substance plaintiff was crossing Main street 15 or 20 feet east of the intersection of Main street and the cross street, that he failed and neglected to keep a lookout for approaching vehicles, that he failed to stop before reaching the pathway of approaching vehicles and failed to exercise due care for his own safety under the attending circumstances, and that plaintiff's own negligence caused or contributed to his injury. He also denied that he was, at the time of the injury, operating the cab in the service of his codefendant, and alleged that he was at said time on his own business en route to his own home on a mission of his own, with his own personal guest.

Plaintiff replied by way of general denial in so far as the allegations of the answer were inconsistent with the allegations of plaintiff's petition.

The issues thus joined were tried to a jury, resulting in a verdict and judgment for plaintiff and against both defendants in the sum of $8,500, and defendants appeal.

There are 28 assignments of alleged error presented under four general propositions.

Under the first proposition it is contended that the court erred in refusing instruction No. 2, offered by defendants:

"* * * That was the duty of the plaintiff, Murdo Cameron, in crossing Main street, to cross at a street intersection, at a place provided for pedestrians, that it was his duty to keep an outlook for automobiles traveling upon said street and not to walk closely in front of approaching vehicles; that it was the duty of the plaintiff in walking across Main street to stop before reaching the pathway of an approaching vehicle after coming into view from the front of another vehicle; and if he was crossing closely in front of an approaching vehicle, to stop before reaching the path immediately in front of such vehicle; and if you find from the evidence that he, the plaintiff, Murdo Cameron, failed to perform any of said duties, and that such failure was the cause of, or contributed to and was partially the cause of his injury, then your verdict should be for both of the defendants."

It is asserted that defendant Earl Endicott "specifically pleaded and proved each of the acts of negligence included in this requested instruction."

There is, however, no evidence whatever that there is or was any ordinance or other regulation of the city of Norman requiring pedestrians in crossing a street to cross at any particular place, nor is there evidence that there was a place "provided for pedestrians."

We do not understand that the law fixes any hard and fast rule governing the conduct of pedestrians in crossing a city street. What the law does require is that the pedestrian shall use that degree of care and

caution for his own safety which an ordinarily prudent person will use under like conditions and circumstances, or what is usually said to be "ordinary care." The court correctly defined negligence, ordinary care, and contributory negligence, and told the jury that if it should find that plaintiff failed to establish negligence on the part of defendant which caused the injuries. or that the injuries, if any, were caused by or contributed to by the negligence of the plaintiff, then the verdict should be for defendants.

There was no error in refusing the instruction as requested.

Defendants further assert that:

"Defendant alleged that plaintiff was guilty of negligence in certain particulars. The evidence showed conclusively that the plaintiff was guilty of said acts of negligence and that same contributed to or caused his injury."

With this assertion we do not agree. The evidence is in direct conflict on every point going to the alleged negligence of the defendants and on every point going to the alleged negligence of plaintiff. Under the record it cannot be said that the evidence conclusively shows any act of negligence by either party. The question then was one wholly for the jury.

Under the second proposition, three assignments of alleged error are presented. They all present the claim that the evidence is insufficient to sustain the verdict. It is first asserted that, although one witness testified that he was driving east on Main street at about 20 or 25 miles an hour when the taxicab passed him just before it struck plaintiff on the left or north side. at a rate of speed estimated at 30 or 35 miles per hour. he did not say how fast he was traveling at the time of the accident. By this we assume that defendants contend that there is no evidence tending to prove that the taxicab was being driven at a greater rate of speed than 20 miles per hour when plaintiff was struck. Evidently counsel overlooked a part of the testimony of the same witness, which is:

"Q Before he was struck. did this taxicab apply his brakes? A. Before he was struck? Q. Yes. A. Well. I couldn't tell about that. Q. Did he check the speed of the car in any way? A. Not until he was hit, I don't think,—at least it looked that way to me."

Without going into the evidence in detail, it is sufficient to say that there is evidence tending to prove violation of the city ordinance by the driver of the taxicab in two or three particulars. True, this evidence is contradicted by defendant, but the question of fact was for the jury. There was no error in overruling the demurrer to plaintiff's evidence, nor in refusing to direct a verdict for defendants.

Defendants suggest that the court erred in overruling their motion for judgment upon the pleadings, because the agency of defendant Earl Endicott was denied under oath and the reply of plaintiff was unverified. No authority is cited in support of this claim, and we have found none. By statute, allegations of agency in the pleadings are taken as true unless denied under oath. When this is done, there is no requirement that the reply must be verified in order to put the question of agency in issue. Denial of agency under oath merely casts the burden upon the party alleging same to prove the alleged agency at the trial.

It is earnestly contended that there was no such proof. The evidence shows that Earl Endicott was driving his father's automobile as a taxicab on the defendant taxicab company's line. It carried the insignia of the taxicab company; the taxicab company received from Endicott $1.40 per diem, for which it furnished headquarter service. telephone service, etc. Endicott's car was sent out on calls the same as the other vehicles operated by the company. Each vehicle would be sent out on calls in regular turn, so that to all outward appearance the Endicott car was used exactly the same as cars owned by the company. The driver was subject to the orders and directions of the company the same as other drivers. Whether the company operated cars which it owned or all cars were operated under the same or similar arrangements, does not appear. There is some evidence tending to show that other cars were operated under conditions similar to those under which Endicott operated.

As in the case of Callas v. Independent Taxi Owners' Association, Inc., et al., 66 Fed.2d 192, counsel for defendants argue that there is no evidence that Endicott, the driver of the cab, was a servant. agent, or employee of the defendant P. & S. Taxi & Baggage Company. Here. as there. the cab was being operated bearing the trade-name and sign of the defendant company. and was legally presumed to be in the custody and under the control of the company whose name it bore. At least the evidence shows a sort of joint adventure or joint enterprise, and therefore sufficient to establish a prima facie case of agency, and present a ques-

tion of fact for the jury rather than one of law for the court.

Under the third proposition, defendants contend that the court erred in refusing an instruction requested by defendants to the effect that if defendant Earl Endicott was driving the cab, not under the control of taxicab company at the time of the injury, but upon a mission of his own, going home to lunch with his guest, who was not a paid passenger, notwithstanding the fact that a P. & S. Taxi sign may have been on, the automobile. the defendant taxicab would not be liable.

Defendant Endicott and John Henry Hodge both testified in substance that about 11:50 a. m., on the morning they left the taxicab office in the automobile used by Endicott as a cab to go to the home of Endicott for lunch, Hodge was at the time of the trial a taxicab driver for another company, but at the time plaintiff was injured Hodge was a taxicab driver for the defendant P. & S. Company, that Hodge was Endicott's guest and paid no fare for the trip, that while on the way the car struck plaintiff and injured him; that Endicott was driving the car at the time, and that the automobile bore the sign of the P. & S. Company.

Hodge testified that he frequently rode home to lunch with Endicott; that sometimes if Endicott was not late for lunch, if some one hailed him on the way for passage he would pick him up and deliver him. It follows that under the evidence, taken in the most favorable light for the defendant cab company, it does not necessarily appear that the taxicab driven by Endicott was out of the service of the P. & S. Company at the time plaintiff was injured. Furthermore, from the evidence it appears that whether Hodge was a paid passenger or not would make no difference to the P. & S. Company. As we understand the evidence, Endicott received and retained all the money earned by the cab he operated. The P. & S. Company was paid at the level rate of $1.40 per diem. So far as the taxicab company was concerned, Endicott was entirely at liberty to transport any passenger without charge, even though such passenger may have called through the company office for service. Whether Hodge was a "paid" passenger was immaterial.

The question of whether the taxicab was in the service of the P. & S. Company at the time plaintiff was injured was one of fact for the jury, and the question was properly covered by instructions given by the court. There was no error in refusing the instruction as requested.

Finally, it is contended that the verdict of the jury is excessive, not supported by evidence as to the item of permanent disability, and is the result of passion and prejudice aroused by incompetent evidence and misconduct of plaintiff's counsel.

There is nothing in the record to indicate passion or prejudice on the part of the jury.

There is nothing in the record to indicate any misconduct of counsel for plaintiff except as contained in the motion of defendants for a new trial. The alleged statements are not otherwise shown and no attempt is made to show objection to the alleged statement of counsel, or the court's ruling thereon, or an exception saved at the time.

The verdict is rather large, considering the actual injuries shown to have been received. Aside from laceration, bruises, etc., of a temporary nature, the injury received was an oblique fracture of both bones of the lower left leg. As a result plaintiff was in the hospital for a period of 78 days, and was confined to his bed an additional three weeks. To the date of the trial. September 17, 1937, he had never been able to walk without the aid of crutches, and there was some evidence tending to show that his injury would be permanent. Plaintiff was at the date of the injury past 70 years of age. Prior to his injury he was an instructor in the Oklahoma University in the woodshop, at a salary of $180 per month. He had gone back to work in a position at which he could work without being on his feet, and was drawing a salary of $60 per month, showing an actual loss of earning power of $120 per month. Prior to his injury he was in good health and active for a man of his age.

Defendants complain because no mortality table was introduced in evidence and no showing of life expectancy was made.

It has been held that, while generally accepted mortality tables are competent and admissible evidence of life expectancy, they are not essential. Jurors may take into consideration "matters of common knowledge" as to probable life expectancy.

There was evidence of pain and suffering, and from plaintiff's condition at the trial; as shown by the evidence, the jury was

warranted in taking into consideration probable future pain and suffering.

Under the record as a whole, we cannot say as a matter of law that the verdict was excessive.

The judgment is affirmed.

PHELPS, CORN, GIBSON, and HURST, JJ., concur.