[Civ. No. 16516.   Second Dist., Div. Two.   Dec. 29, 1948.]

NORMAN SMITH, Respondent, v. MORTON J. DEUTSCH et al., Defendants; WAR VETERANS TAXICAB ASSOCIATION, INC. (a Corporation), Appellant.

Syril S. Tipton and Patrick H. Ford for Appellant.

Fink, Rolston, Levinthal & Kent for Respondent.

WILSON, J.—Plaintiff was injured in a collision when his motorcycle was struck by a taxicab alleged to have been owned and operated by defendants Deutsch and War Veterans Taxicab Association, Incorporated, and driven and operated by Deutsch. Deutsch was not served, made no appearance in the action and did not testify. Judgment was rendered in favor of plaintiff against War Veterans Taxicab Association, Incorporated, from which this appeal was taken.

The facts relating to the accident are undisputed: Plaintiff was riding his motorcycle westerly on Yucca Street, in Los Angeles, and the taxicab was traveling southerly on Las Palmas Avenue. A boulevard stop sign at the northwest corner of the two streets was not obeyed by Deutsch with the result that his cab struck plaintiff and his motorcycle. When plaintiff saw the taxicab was not stopping he stopped his motorcycle but did not succeed in avoiding the collision. Two eyewitnesses who saw the accident testified that the cab was traveling south on Las Palmas Avenue at a "good rate of speed"; it did not make the boulevard stop; there was a boulevard stop sign with a reflector therein at the northwest corner; the taxicab hit the motorcycle and driver, skidding about 20 feet before coming to a stop.

A police officer who investigated the accident testified the skid marks were 33 feet in length, and brush marks extended for an additional distance of 23 feet north of the point of collision. He observed the smell of alcohol on Deutsch's breath.

Appellant's principal contention is that the evidence is insufficient to prove that it owned, operated or controlled the taxicab or that Deutsch was appellant's agent. The taxicab was painted with the distinctive blue and silver colors adopted by appellant for the cabs operated by and under the direction of the association. The words "War Veterans Taxicab" were painted on each side of the cab. These facts alone are sufficient evidence of ownership. (*Tieman* v. *Red Top Cab Co.*, 117 Cal.App. 40, 45 [3 P.2d 381]; *Nash* v.

*Wright,* 82 Cal.App.2d 467, 473 [186 P.2d 686] ; *Guderitz* v. *Boadway Bros.,* 39 Cal.App. 48, 50 [177 P. 859].) The instant case is unlike those cited by appellant where the evidence showed that the respective automobiles involved in the cases were driven by an employee without his employer's consent, were not held out to the public as belonging to the employer and there was nothing about them to indicate to the public that they belonged to the respective defendants. (See *Engstrom* v. *Auburn etc. Corp.,* 11 Cal.2d 64 [77 P.2d 1059] ; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198].)

Defendant contends that a presumption of ownership, produced by the color of the cab and the name painted thereon, is overcome by the evidence of the officers of appellant association. Its public relations counsel testified that the association never had a franchise from the city of Los Angeles; it owned no taxicabs; it had no stands from which cabs were dispatched; it did not direct cabs to any location; it did not charge a percentage of what the drivers received in revenue; there were 130 members of the association who agreed to operate their own cabs; no instructions were given as to when or where cabs were to be operated; drivers were not to be paid a charge but were to accept as tips such amounts as passengers should offer. He further testified that Deutsch was not a member of the association although he knew that Deutsch drove a taxicab; there were a number of nonmembers who operated cabs pending final settlement and organization; some members made contributions to the association for advertising; there were about 301 members and 65 cabs in the association. In May, 1947, the witness appeared before the board of public utilities in an effort to obtain a franchise.

The articles of incorporation of appellant set forth as some of its purposes and objects (1) to conduct an association of a group of veterans who shall own and operate a general taxicab business for hire; (2) to provide rules, regulations and instructions for the members to guide them in the methods and manner of operating their taxicabs. Beginning in June, 1946, defendant association engaged in an effort to obtain a franchise in its own name to operate taxicabs in the city of Los Angeles; it had a number of taxicabs painted in uniform colors and design and with the insignia and name of the association thereon operating on the streets as so-called ''free'' taxicabs working on a tip basis; it advertised to the public, engaged public relations counsel; spent more than $40,000 to

obtain the franchise; made substantial deposits and performance bonds therefor and had a surplus in trust in the bank; it purchased meters and obtained a commitment on approximately 200 new taxicabs.

Appearing before the Los Angeles Board of Public Utilities representatives of the association stated that although it was originally termed a nonprofit corporation in its incorporation papers, that was not the proper form of organization, and the corporation was being reorganized to correct the misnomer. Evidence was offered before the board of public utilities that the supervision of the cabs was not limited and that they were to be controlled by the association in a supervisory manner. By reason of these efforts a franchise was obtained which was used by a successor corporation organized after the granting of the franchise.

One Harp, a nonveteran, had a contract with the corporation whereby he was to receive a percentage of the gross income as soon as the franchise was obtained. It was represented to the board that some but not all members of the association owned cabs of their own; that the association had about 65 or 70 cabs on the street in 1946; that a number of drivers operated veterans' taxicabs in June, 1946, who had not become members pending final settlement and organization, but they made contributions to the association in the same manner as the members.

The president of the association testified the association maintained insurance under its own name on all taxicabs bearing its name and insignia, and reported to the insurance company concerning accidents.

Deutsch drove one of the taxicabs with defendant association's distinctive colors, name and design thereon with the knowledge and consent of defendant. When asked whether Deutsch was a member of the association Harp did not give a direct answer but said "Not to my knowledge, no."

It is apparent that the jury was not favorably impressed with Harp's testimony, since, when confronted with a serious discrepancy between his evidence at the trial and that given by him before the board of public utilities, he responded "If you will check you will find I was not under oath then."

At the time of the accident the association had supervisors patrolling the streets on day and night shifts. Soon after the accident an automobile with its distinctive markings drove to the scene, the driver showed his card to police officers, talked to them and to Deutsch, made measurements at the scene of

the accident, and remained until a tow truck removed the taxicab.

That the association exercised powers of control over the drivers is shown by the by-laws. Among the grounds for expulsion of members were disorderly conduct, making lewd remarks, intentionally insulting other members of the association, wilful dishonesty, wilful falsification of statements, wilful traffic with prostitutes or narcotics, repeated deliberate carelessness endangering other members of the association, gross dishonesty, wilful intoxication, insubordination, inefficiency or "inability to perform the duties for which the member of this association was expressly employed to do."

Officers of the association testified that drivers were not told when or where to operate, except that they were limited to the city of Los Angeles, but that the failure so to instruct drivers is typical of the taxicab business of other companies. Drivers were instructed how to operate; their method of dealing with customers was prescribed; before cabs were allowed to be in operation they were examined and approved; the competency and sobriety of drivers was observed and instructions were given by the association to the drivers as to the use of taxicab zones.

In the case of *Callas* v. *Independent Taxi Owners' Ass'n, Inc.*, 66 F.2d 192 [62 App.D.C. 212], the court held in a situation almost identical with that in the instant case that the liability of the defendant was a question of fact to be determined by the jury; that it was not a question of law; that plaintiff's case rested on the presumption of ownership arising from the fact that the cab bore its name and colors; that the presumption was evidence and was sufficient to take the case to the jury. The defendant denied that the driver of the cab was the agent or servant of the association, and a witness testified that the company was not engaged in the cab business. The charter of the association showed its authority to operate taxicabs, the cab bore the peculiar colors of the association. By reason of these facts the court held that the cab was "legally presumed to be in the custody and on the business of the persons whose name it bore." The evidence in the Callas case was meager as to the method of operation of the cab and the control exercised by the defendant association over the cabs and the drivers. The evidence in the instant case, only a portion of which is outlined above, is so complete as to leave no doubt that Deutsch was operating under the direction and control of defendant association.

■ Defendant pleaded contributory negligence of plaintiff and now complains because the court failed to give any instructions to the jury upon that defense. The record is devoid of any evidence of contributory negligence or of any evidence from which an inference of contributory negligence may be drawn. Plaintiff was riding his motorcycle westerly on Yucca Street which he traversed almost nightly in going to a restaurant for his dinners. Lines of cars were ahead of him and behind him traveling in the same direction, as well as a line of cars going in the opposite direction. As he approached the intersection of Las Palmas Avenue he knew the existence of the boulevard stop sign from his long acquaintance with the intersection; as he proceeded toward the intersection he saw the sign; he had gone more than halfway .across Las Palmas Avenue when the taxicab entered the intersection without having made a stop; it was traveling at such speed that it skidded 33 feet before coming to a stop; plaintiff was traveling at a slow speed.

Defendant asserts as a reason for the giving of an instruction on contributory negligence that plaintiff was traveling faster than the condition of traffic permitted and that he failed to keep a proper lookout for vehicles approaching on Las Palmas Avenue. There is no evidence whatsoever to justify such contention. Since plaintiff was in a line of traffic he could not have been going faster than the automobiles that were traveling in the same direction. He did not fail to look for traffic on Las Palmas Avenue. He saw the taxicab approaching and stopped his motorcycle when he saw the cab did not obey the stop sign. In the absence of any basis for a claim of contributory negligence the court did not err in refusing instructions on that issue.

■ Defendant asserts error in giving the following instruction: "If you find from the evidence that Morton J. Deutsch at the time of the accident in question was acting as agent, servant or employee of the defendant, War Veteran's Taxicab Association, Inc., and was acting within the scope of his authority, and if you further find that Mr. Deutsch was guilty of negligence which proximately caused the accident, then you must find for the plaintiff." Defendant maintains that the foregoing instruction told the jury that plaintiff was entitled to recover as a matter of law if the negligence of Deutsch was a proximate cause of the accident and if he was acting as the agent for appellant, and that it wholly excluded the defense of contributory negligence. Since, as we have

already stated, that defense was not available there was no error in the instruction as given.

Defendant assigns error in the giving of the following instruction: "It is not necessary that a specific act, or failure to act, be authorized as such by the principal to bring it within the scope of the agent's authority. It is within the scope of his authority if it is done while the agent is engaged in the transaction of business which has been assigned to him for attention by his principal." It is contended that the instruction assumed that Deutsch was appellant's agent, which was a disputed issue in the case. The court did not intimate to the jury whether Deutsch was or was not the association's agent but merely stated in abstract language that it was not necessary that the principal authorize the commission of a specific act in order that it be within the scope of the agent's authority. The jury could not have been misled by the instruction since in a preceding instruction it was specifically told that whether defendant corporation was in fact the principal for whom Deutsch was acting as agent within the scope of his authority was an issue for them to decide.

That the jury was expressly advised that the issue of agency was one which it should decide is contained in the following instructions: (a) "You are hereby instructed that the burden is on the Plaintiff Smith to prove by preponderance of the evidence that the automobile which was involved in this accident was being operated by Morton J. Deutsch and that said automobile was either owned by the defendant, War Veteran's Taxicab Association, a corporation, or was at the time of the accident being operated as a taxicab under the direction or control of the defendant, War Veteran's Taxicab Association, a corporation." (b) "You are instructed that the burden is on the Plaintiff Smith to prove by preponderance of the evidence that the defendant, War Veteran's Taxicab Association, a corporation, was on June 2, 1946, operating a taxicab business and that the automobile involved in this accident was at the time of the accident being operated in the taxicab business and that at the time of the accident the War Veteran's Taxicab Association, a corporation, exercised or had the right to exercise direction and control of the manner in which said car was being operated." (c) "If, from the evidence, you believe that at the time of the accident herein, the automobile which struck the plaintiff was being operated by Morton J. Deutsch as an individual, and that the War Veteran's Taxicab Association, a corporation, had no authority to direct the

mode and manner in which said car should be operated, then your verdict should be for the defendants.'' (d) ''If from the evidence you believe the War Veteran's Taxicab Association, a corporation, was on June 2, 1946, engaged only in an enterprise to obtain a charter to operate a taxicab business and that on said date said War Veteran's Taxicab Association, a corporation, had no authority and exercised no control or discretion over Morton J. Deutsch in the operation of the automobile being operated by him at the time that this accident happened, then your verdict must be for the defendant, War Veteran's Taxicab Association, a corporation.'' By instructions (a) and (b) the jury was told that the burden was on plaintiff to prove that defendant had control of Deutsch and the taxicab, and by instructions (c) and (d) that if defendant had no control over Deutsch and the taxicab the verdict should be in its favor. The instructions read as a whole did not contain any error.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied January 17, 1949, and appellant's petition for a hearing by the Supreme Court was denied February 24, 1949.