## THOMAS v CHECKER CAB COMPANY, INC.

### OPINION OF THE COURT

1. TORTS—EMPLOYERS—EMPLOYEES—VICARIOUS LIABILITY—INDEPENDENT CONTRACTORS—ESTOPPEL.

Generally, an employer is vicariously liable for the torts of his employee committed while the employee is acting within the scope of his employment, but is not similarly liable for the tortious actions of independent contractors; however, where one holds himself out as the employer of a person, and there is reliance, that apparent employer is estopped from arguing that such person is an independent contractor.

2. ESTOPPEL—TAXICABS—NEGLIGENCE—EMPLOYERS—EMPLOYEES—INJURIES TO THIRD PARTIES—RELIANCE.

A taxicab company cannot be estopped from denying liability for injuries to nonpassengers caused by a negligent cab driver because of a lack of employer-employee relationship where the cabs are owned by independent operators because such third parties have not relied upon the employer-employee relationship between the taxicab company and the operator of the cab.

3. NEGLIGENCE—TAXICABS—CUSTODY AND CONTROL—PRESUMPTIONS—JURY QUESTION.

Evidence establishing that a defendant taxicab company's name and colors are upon a taxicab creates a prima facie case that the company has custody and control of the cab, whether the company owned it or not; this presumption of custody and control is sufficient to avoid a directed verdict at the close of plaintiff's proofs on the question of whether the taxicab company is liable for injuries caused by a negligent driver to a nonpassenger.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 41 Am Jur 2d, Independent Contractors §§ 4, 24 *et seq.*

[3, 4] 41 Am Jur 2d, Independent Contractors § 6 *et seq.*

[5, 6, 8, 9] 30 Am Jur 2d, Evidence § 1086.

    57 Am Jur 2d, Negligence §§ 7, 9.

    75 Am Jur 2d, Trial §§ 336, 489.

[7] 3 Am Jur 2d, Agency §§ 130, 135.

4. Negligence—Taxicabs—Custody and Control—Presumptions— Burden of Proof—Burden of Going Forward.

The rule which creates a presumption of custody and control of a taxicab where a taxicab company's name and colors appear on the cab affects only the burden of going forward with the evidence; the ultimate burden of proof is still upon the plaintiff.

5. Negligence—Taxicabs—Trial—Directed Verdict—Presumptions—Jury Question.

A directed verdict for a defendant taxicab company cannot be granted at the close of the plaintiff's proofs where there is a presumption of an employer-employee relationship between the company and the negligent cab driver because the company name and colors appear on the cab, which presumption is evidence to go to the jury; a directed verdict can properly be granted at the close of all proofs in the proper circumstances, but generally whether the effect of the presumption was overcome by the defendant's evidence is a question for the jury.

6. Negligence—Taxicabs—Trial—Directed Verdict—Presumptions—Employers—Employees—Degree of Control.

The propriety of a directed verdict for a defendant at the close of all proofs is doubtful where the plaintiff, a party injured by a negligent taxicab driver, did not rely solely upon the presumption that the defendant, a taxicab company which did not own the cab, was the employer of the negligent driver, but where testimony established at least some degree of control by the company over the activities of the drivers.

7. Release—Covenant Not to Sue—Principal and Agent.

Execution by a plaintiff of a "covenant not to sue" in exchange for payment from a taxicab owner does not operate as a release of a taxicab company under whose name and colors the cab was operated.

Dissent by V. J. Brennan, J.

8. Negligence—Taxicabs—Trial—Directed Verdict—Employers—Employees—Case Precedent—Checker Cab Company.

*A directed verdict was properly granted in favor of defendant Checker Cab Company in an action brought by a third party injured by a negligent cab driver where the cab company does not own and operate the cabs nor hire the drivers; the status of the company as an employer is a question of law, and prior*

*case precedent has held that, as a matter of law, the Checker Cab Company is not the employer of its drivers.*

9. NEGLIGENCE—TAXICABS—TRIAL—DIRECTED VERDICT—EMPLOYERS— EMPLOYEES—EVIDENCE.

   *A directed verdict was properly granted in favor of a defendant taxicab company in an action brought by an injured party where the plaintiff failed to introduce sufficient evidence to prove an employer-employee relationship between the taxicab company and the cab driver whose negligence caused the injury.*

Appeal from Wayne, Charles Kaufman, J. Submitted June 13, 1975, at Detroit. (Docket No. 20258.) Decided December 8, 1975. Leave to appeal applied for.

Complaint by Gilmer Thomas and Dorothy Thomas against Checker Cab Company, Inc. for damages for injuries received in an automobile collision. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Barbara, Wisok, Tavoularis, Ruby & Domol, P. C.,* for plaintiffs.

*August, Thompson, Sherr & Miller, P. C.,* for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

BRONSON, P. J. We are asked to decide here whether a person injured by the tortious conduct of a "Checker" taxicab driver has presented sufficient proofs to impose liability upon defendant, Checker Cab Company. We hold that proof that the company is furnishing services to these taxicabs, such as a trade name, headquarters, or radio dispatching, is sufficient to avoid a directed verdict prior to defendant's proofs.

Plaintiffs, Gilmer and Dorothy Thomas, were

injured in an automobile accident occurring on June 21, 1970. Plaintiffs' car collided with a Checker taxicab driven by Wendell West, and owned by Tim Castillo. Alleging that the accident was caused by West's negligence, plaintiffs brought separate suits against Tim Castillo and defendant, Checker Cab Company. These two cases were consolidated for trial.

Plaintiffs attempted to impose liability upon Checker Cab by proving that a master-servant or employer-employee relationship existed between Checker and the cab driver, Wendell West. At the close of plaintiffs' proofs, Checker moved for a directed verdict of no cause of action, on grounds that there had been no showing of control by Checker over the various operations of the drivers. That motion was granted, with the trial judge holding that Checker was actually an agent of the cab owners. Plaintiffs appeal from that decision as of right.

After the trial judge granted the motion for a directed verdict, the case proceeded without Checker Cab Company, and a judgment was entered in favor of plaintiffs against Tim Castillo.

Testimony at trial indicated that any person desiring to take a "Checker Cab" could hail one from the street or call a single telephone number, Woodward 3-7000. "Checker Cabs" are identifiable on the street by potential customers through the Checker Cab insignia and a common color scheme. When a call is placed to the above telephone number, it is answered through a switchboard call system maintained by Checker Cab Company. The request for cab service is then relayed to one of the radio-equipped "Checker Cabs". One company official at trial estimated that 40% of the company business came from radio calls.

We hold that such proof that Checker Cab Company holds itself out to the public as having control over the operation of "Checker Cabs" was sufficient to constitute prima facie showing of an employer-employee relationship between Checker Cab Company and the cab drivers. The trial judge improperly granted a directed verdict in favor of Checker Cab, and we reverse.

Checker argues that even if a taxicab company holds itself out as purporting to be the employer of the drivers, no liability results toward third-person non-passengers injured by the driver's negligence. That contention rests upon the premise that Checker is not "estopped" from denying an employer-employee relationship unless the injured party relied upon the appearance of such a relationship. We accept that premise, but disagree with the conclusion, inasmuch as our decision does not rest on an "estoppel" doctrine.

As a general rule, an employer is vicariously liable for the torts of his employee committed while that employee is acting within the scope of his employment, but is not similarly liable for the tortious actions of independent contractors. One exception to the independent contractor rule is found in the doctrine of "estoppel". The application of that doctrine to the area of vicarious liability is found in 1 Restatement Agency 2d, § 267, p 578:

> "One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

Where one holds himself out as the employer of a

certain person, and there is reliance, that apparent employer is estopped from arguing that such person is an independent contractor.

Checker correctly points out that the reliance element has been interpreted by the courts to exclude "reliance" by the general public. The Restatement illustration following the rule fits our situation exactly:

"1. P, a taxicab company, purporting to be the master of the drivers of the cabs, in fact enters into an arrangement with the drivers by which the drivers operate independently. A driver negligently injures T, a passenger, and also B, a person upon the street. P is not liable to B. If it is found that T relied upon P as one furnishing safe drivers, P is subject to liability to T in an action of tort."

Pedestrians and drivers of other cars injured through the tortious conduct of a taxicab have not "relied" upon the employer-employee relationship as that term is used here. See, for example, *Mercury Cab Owners' Association v Jones,* 79 So 2d 782, 784 (Fla, 1955), *Rhone v Try Me Cab Co,* 62 App DC 201; 65 F2d 834 (1933). Estoppel cannot be used to hold the taxicab company liable for injuries to non-passengers.

Estoppel creates liability on the part of the apparent employer as a matter of law once the fact of a representation and justifiable reliance are established. As we concluded above, that doctrine cannot be applied here. However, we find that proof that Checker held itself out as the employer of the drivers was sufficient to prevent a directed verdict for another reason—that proof established a prima facie showing of an employer-employee relationship. Under this concept, liability is not placed upon Checker as a matter of law, but,

rather, the burden of going forward with the evidence is shifted to defendant.

We adopt the rule followed in many other jurisdictions: evidence establishing that defendant company's name and colors are upon the taxicab creates a prima facie case that defendant had custody and control of that cab, whether the company owned it or not. That presumption of custody and control is sufficient to carry the case to the jury, *Callas v Independent Taxi Owners' Association,* 62 App DC 212; 66 F2d 192 (1933), *P & S Taxi & Baggage Co v Cameron,* 183 Okla 226, 230; 80 P2d 618, 622 (1938), *Cappello v Aero Mayflower Transit Co,* 116 Vt 64, 67; 68 A2d 913, 915 (1949), *Walker v Johnston,* 236 SW2d 534, 541 (Tex Civ App, 1951), *Reddick v Gilliam,* 263 P2d 742 (Okla, 1953), *Mercury Cab Owners' Association v Jones,* 79 So 2d 782, 784 (Fla, 1955).[1] This rule affects only the burden of going forward with the evidence, and not the ultimate burden of proof, which is still upon plaintiffs, *Smith v Deutsch,* 89 Cal App 2d 419; 200 P2d 802 (1948).

The rule which we now adopt was created in recognition of the difficulties injured individuals encounter in unraveling the complex organization structures set up between taxicab companies and their drivers. The equitable nature of this type of rule is emphasized in *Fullerton v Motor Express, Inc,* 375 Pa 173, 175–176; 100 A2d 73, 74 (1953), wherein it was stated:

---

[1] Other cases seem to have applied the substance of this rule without referring to it by name. In *Richmond v Clinton,* 144 Kan 328; 58 P2d 1116 (1936), the Court held that sufficient evidence of an employer-employee relationship was presented to allow the case to go to the jury. Although the Court enumerated various factors, they all related to the appearance conveyed to the public of an employer-employee relationship. *See also, Adams v Summers,* 222 Ark 924; 263 SW2d 711 (1954), where the company admitted a "modicum of control", but where the important aspect was the displaying of the company trade name on the taxicab.

"The law is clear that an identifying sign on a commercial vehicle declares its reputed ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle misstates ownership, opportunity is afforded the named person or firm to disprove the asserted proprietorship.

\* \* \*

"The most elementary rules of logic, woven into the fabric of correlative social responsibility, as well as the requirements of simple justice, demand that the law be as above indicated. The person who is struck down by a strange vehicle cannot automatically know the business of the owner of the vehicle; and, even with the most diligent inquiry, he may not be able to ascertain the nature of the mission to which the driver was committed at the time. Hence the imperative necessity of the presumption, in a situation of this kind, that the first person or firm to be called to answer for the mishap should be the person or firm whose name decorates the offending vehicle."

The rationale behind a similar presumption was presented in *Webb v Dixie-Ohio Express Co, Inc,* 291 Ky 692, 694; 165 SW2d 539, 540 (1942):

"Because it is often impossible for the plaintiff to prove the agency of the operator, it is deemed desirable socially that the burden of introducing evidence on nonagency should be placed upon the defendant in whose peculiar knowledge rests the material evidence essential to a determination of this fact."

Recognizing these policy considerations, we feel that the above-stated rule is the best one to apply to the case at hand.[2]

The presumption of an employer-employee rela-

---

[2] We do not find the result we reach here to be precluded by the case of *Flueling v Goeringer,* 240 Mich 372; 215 NW 294 (1927). Suit in that case was against Checker Cab Company, but the sole issue

tionship is evidence to go to the jury, so a directed verdict cannot be granted at the close of plaintiffs' proofs. It should be noted, however, that a directed verdict can properly be granted at the close of *all* proofs. That would occur only in rare cases, however.[3] A good example of such an extreme set of circumstances is found in *Burns v Michigan Paint Co,* 152 Mich 613; 116 NY 182 (1908). There, plaintiff relied *only* on the proof that he was injured by a truck bearing defendant company's name. On the other hand, defendant presented "undisputed" proofs of complete control by the driver over the operations of his work. The Court held that the trial judge should have granted a directed verdict at the close of the proofs.

We of course cannot decide now whether a directed verdict would have been proper at the close of defendant's proofs. However, we express strong doubts that such a ruling would have been correct. Plaintiffs did not rely solely upon the presumption in this case. The testimony at trial

decided was whether Checker "was a nonprofit corporation and not liable to respond in damages" for the tort of the taxicab driver. The Court did not reach the issues considered here, for they held that the nonprofit status of Checker precluded liability:

"The law permitting corporations, not for pecuniary profit, admits of no business gains from which judgments in actions like this can be satisfied, and the company cannot turn the dues of the members to such a purpose for the dues are devoted to a service from which the company derives no pecuniary gain. We must hold that the Checker Cab Company, existing as a nonprofit corporation, is not liable to respond in damages for the tort of Goeringer." *Flueling, supra,* at 375.

The immunity of nonprofit corporations is part of the doctrine of charitable immunity, Prosser, Torts (4th ed), § 133, p 992, fn 28. The Michigan Supreme Court in *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960), abolished charitable immunity in Michigan. We hold that *Flueling* has been overruled *sub silentio* by the *Parker* case. Therefore, since *Flueling* did not reach the issues here, and has been overruled on the issues it did reach, we decline to follow it here.

[3] In general, whether the effect of the presumption was overcome by defendant's evidence is a question for the jury, *Callas v Independent Taxi Owners' Association,* 62 App DC 212; 66 F2d 192 (1933), *Fullerton v Motor Express, Inc,* 375 Pa 173, 175; 100 A2d 73, 74 (1953).

established at least some degree of control by
Checker over the activities of the drivers. Checker
was shown to be operating a personnel office at
which prospective drivers applied for jobs. Al-
though Checker officials maintained that the ulti-
mate authority to hire drivers rested with the
owners, several drivers testified that Checker itself
had appeared to hire them. Checker officials ad-
mitted that an organizational structure was main-
tained by them to resolve complaints against driv-
ers but they again insisted that the ultimate au-
thority to dismiss a driver was in the owner of the
taxicab. Finally, there was testimony to the effect
that a book of rules and regulations was distrib-
uted to the drivers by Checker. In light of that
evidence, it would be hard for us to say that
defendant's proofs of lack of control would have
been "undisputed".

Checker also argues on appeal that Tim Castillo
entered into a release with plaintiffs, whereby
plaintiffs' cause of action was surrendered for a
payment of approximately $31,000. The argument
is that the release of the "servant" releases the
"principal", rendering this appeal moot. It must be
summarily rejected, for the document executed
was a "covenant not to sue", which has no effect of
releasing the principal, Prosser, Torts (4th ed),
§ 49, p 303, *Cook v City Transport Corp,* 272 Mich
91; 261 NW 257 (1935), *Boucher v Thomsen,* 328
Mich 312; 43 NW2d 866 (1950), *Centala v Navrude,*
45 Mich App 282; 206 NW2d 544 (1973).

Reversed and remanded, cost of this appeal to
plaintiffs.

D. E. HOLBROOK, JR., J., concurred.

V. J. BRENNAN, J. *(dissenting).* The trial judge
could properly direct a verdict in favor of defend-

ant Checker Cab Company; we err by disturbing his order. I believe the majority is wrong for several reasons.

First, the status of Checker Cab Company as an employer is not, in this case, dependent on the factual question of control. Rather, the status is a question of law that has previously been resolved by the Michigan Supreme Court. In *Flueling v Goeringer,* 240 Mich 372; 215 NW 294 (1927), the Court stated:

"[T]he [Checker Cab] company does not own and operate a taxicab business but only serves as a medium for promoting and regulating the individual cab service rendered by its members * * * . It is true that the advantage of such association under incorporation and central regulation results in pecuniary profit to members, but such profit does not at any time belong to or come to the members through the company." 240 Mich 372, 374–375.

My reading of *Flueling* is that Checker Cab cannot be dubbed an employer, but rather an association organized for the advancement of mutual interests.

It is true, as the majority notes, that *Flueling's* major holding, concerning the immunity of non-profit corporations, appears to have been undercut by *Parker v Port Huron Hospital,* 361 Mich 1, 105 NW2d 1 (1960). However, *Parker* makes absolutely no inroads on the *Flueling* logic quoted above. What was correct in 1927 is no less correct today: Checker Cab Company, as a matter of law, is not the employer of its members' drivers and each member, not Checker, owns his own cabs. Because the question was one of law, the trial judge very properly granted a directed verdict.

Even if I were to agree that Checker Cab's status as employer is a factual question, I do not believe that plaintiffs introduced sufficient evidence to ward off a directed verdict. I do not believe that a reasonable jury could possibly find Checker Cab Company to be an employer of the negligent driver based on plaintiffs' skimpy and inconsistent evidence. I cannot accept the majority's proposition that proof of similarity of color and insignia and use of common switchboard constitutes a prima facie case; to me it constitutes only a weak attempt to find a deep pocket.

The majority uses phrases such as, "presumption of control", "burden of going forward", "burden of introducing evidence of non-agency". I sympathize with the defendant who must now produce evidence of "non-agency".

The majority's opinion, I feel, fails also because it is conclusory. "[W]e find that *proof that Checker held itself out as the employer* of the drivers was sufficient to prevent a directed verdict * * * [because] that proof established a prima facie showing of an employer-employee relationship." (Emphasis added.) The majority, by characterizing the proof as indicative of employer status, concludes that the proof is indicative of employer status. Common colors and common insignia do not intrinsically suggest an employer status; to assert that they do begs the question.

The plaintiffs had their day in court, had the opportunity to employ powerful discovery tools, and yet still failed to convince the learned judge below that there was any merit to their case. The majority, by creating a presumption where none existed before, goes too far in aiding litigants who cannot prove their cases.