NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0877n.06
Filed: December 5, 2006

No. 06-1061

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| George E. Ward, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Sun Valley Foods Co., Inc., | ) | **O P I N I O N** |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE:     GIBBONS, MCKEAGUE, Circuit Judges; and BUNNING, District Judge.[*]

**McKeague, Circuit Judge.** Appellant George E. Ward asks that this court reverse the district court order that affirmed a decision by the bankruptcy court to deny Ward attorney fees arising from his representation of Appellee Sun Valley Foods Co., Inc. while he worked of counsel with his law firm. Ward claims that the court below erred by (1) equating a covenant not to sue with a waiver of a claim for unpaid attorney fees; (2) treating the express exclusion of Ward's beneficial interest from the covenant not to sue as surplusage; and (3) interpreting Ward's agreements with his former law firm as empowering the firm and its successor to waive his beneficial interest in the unpaid attorney fees. For the reasons stated below, the panel affirms the order of the district court.

### I. BACKGROUND

_____

[*] The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The opinion of the United States Bankruptcy Court for the Eastern District of Michigan adequately sets forth the facts in this case. Sun Valley Foods filed its Chapter 11 petition on October 10, 1984. The bankruptcy case was closed on January 27, 1988, and Sun Valley emerged as a newly organized company.

Prepetition, George Ward represented Sun Valley Foods in state court in a lease dispute with its landlord, Detroit Marine Terminals ("DMT"). The dispute led to extensive litigation in the two years before the bankruptcy filing. When it became apparent that Sun Valley would have to file for bankruptcy protection, Ward recommended that it retain attorney Richard Fellrath of the firm of Stern, Milmet, Vecchio, Goll & Carnago, P.C., of which Ward was of counsel.

Fellrath filed the bankruptcy petition on behalf of Sun Valley. The Order Appointing the Debtor in Possession, entered on October 12, 1984, authorized the debtor-in-possession to employ Richard Fellrath as its attorney. DMT filed an adversary proceeding against the debtor-in-possession to enforce a state court eviction order. It retained Ward to represent it in the adversary proceeding.

On January 29, 1985, Milmet, Vecchio, Ward & Carnago, P.C.,[1] filed its first petition for allowance of fees as attorney for the debtor-in-possession. Ward did not sign the petition. The fee application sought attorney fees of $56,550.80 and expenses of $3,469.37 for the period

---

[1] Although the record and the parties' briefs are not entirely clear on this point, it appears that Milmet, Vecchio, Ward & Carnago, P.C., is the successor firm to Stern, Milmet, Goll & Carnago, P.C. Accordingly, those firms will be referred to collectively as the "Law Firm," as is done in the parties' briefs. Butzel Long, P.C. later merged with the firm of Milmet, Vecchio, Ward & Carnago, P.C.

October 9, 1984, through December 21, 1984.  The application included fees for the services of George Ward.  DMT objected on the grounds that Ward's services produced no benefit to the estate.  Bankruptcy Judge Brody allowed fees in the amount of $35,000, but held in abeyance a decision on the remainder of the fees until resolution of the litigation that Ward was handling.  Judge Brody stated that if Ward was unsuccessful, there would be no benefit to the estate and thus no fees should be awarded.

On August 15, 1985, the Law Firm filed its second petition for fees seeking attorney fees of $36,076.25 and expenses of $1,937.03 for the period of December 21, 1984, through July 2, 1985.  Ward did not sign the petition.  Again, DMT objected on the grounds that the services of George Ward were of no benefit to the estate.  On September 30, 1985, the Court entered an order allowing fees in the reduced amount of $30,000.

On January 27, 1986, the Law Firm filed its third fee application, seeking fees of $24,803.75 and expenses of $2,196.96 for the period July 3, 1985, through November 13, 1985.  Ward signed the petition in his capacity as of counsel.  Again, DMT objected on the grounds that Ward's services were of no benefit to the estate.  The Court conducted a hearing on the fee application and took the matter under advisement.

On September 11, 1986, the Law Firm filed its fourth fee application seeking fees of $53,622.50 and expenses of $4,931.85 for the period November 1, 1985, through June 30, 1986.  Ward signed the petition on behalf of the firm.  The creditors committee filed an objection to the reasonableness of the fees.  On November 5, 1986, the debtor-in-possession filed a malpractice action in state court against Richard Fellrath, George Ward, and the Law Firm.

On January 27, 1987, the Law Firm filed its fifth and final fee application, seeking fees of $8,835 and expenses of $343. Ward did not sign the petition. On March 10, 1987, the Court entered an order taking the fee application under advisement until the conclusion of the state court malpractice action. On April 28, 1987, the Court entered an amended order stating that all fees pending or which had previously been awarded would be taken under advisement pending a decision on the state court malpractice action.

Twelve and a half years later, on July 30, 1998, Sun Valley entered into a settlement agreement in the malpractice action with Richard Fellrath, Morris Milmet, Frank Vecchio, the Law Firm, and Butzel Long, P.C. The agreement specifically excluded George Ward or George Ward, P.C., and provided that the settlement was not intended to affect any right George Ward may have to unpaid attorney fees from Sun Valley.

Six years later, on August 13, 2004, the state court entered a judgment in favor of George Ward and George Ward, P.C., on Sun Valley's malpractice action. On December 14, 2004, George Ward filed a motion to reopen this bankruptcy case for purposes of collecting the fees that were allowed but held in abeyance and to have the remainder of the fees decided. On March 14, 2005, the bankruptcy court entered an order reopening the case.

The bankruptcy court concluded that Ward is not entitled to any of the fees that he seeks. It reasoned that he holds no claim for fees separate from the claim of the firm for which he was employed of counsel and that the firm waived its fee claim against Sun Valley. Additionally, the bankruptcy court held that the assignment from Butzel Long, P.C., the successor firm, to Ward does not help Ward because Butzel Long's predecessor had waived its right to any fees from Sun

Valley.  Accordingly, Butzel Long had no interest left to assign.  Ward filed a timely appeal with the United States District Court for the Eastern District of Michigan, which affirmed for the same reasons, stating on the record that Ward "has not produced any evidence showing that he was entitled to any legal fees separate from the fees that [had] been claimed and collected apparently by the firm, or at least claimed by the firm."  JA I. at 312, 314.  Ward filed a timely appeal.

## II.  ANALYSIS

### A.  Standard of Review

In a case from the bankruptcy court that reaches this court by way of an appeal from a district court's decision, this court reviews directly the bankruptcy court's decision.  *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004); *In re Knight Trust*, 303 F.3d 671, 676 (6th Cir. 2002).  Accordingly, findings of fact by the bankruptcy court are reviewed under the clearly erroneous standard, and conclusions of law by the bankruptcy court are reviewed under the de novo standard.  *Gardner*, 360 F.3d at 557; *Knight*, 303 F.3d at 676.

### B.  Ward's entitlement to attorney fees

Ward ultimately asks this court to reverse "the Order appealed from . . . and remand[] [the case] for allowance and payment of Ward's portion of the unpaid attorney fees."  (Appellant's Br. 28).  The record clearly shows, however, that Ward has no claim to the attorney fees and that the bankruptcy court and the district court correctly decided the matter.

Any fees earned by Ward while he was of counsel to the Law Firm were property of the firm, not of Ward.  Indeed, Ward agreed to that proposition in a letter dated October 14, 1981 from the Law Firm which states at its beginning that it is "to confirm our understanding for

[Ward's] engagement with the law office [] on an Of Counsel basis on the terms and conditions hereinafter set forth." JA I. at 57. That letter states that from and after its commencement date, Ward "will practice law exclusively for and with the undersigned firm and *all fees earned thereafter will be the property of the firm* [excluding certain teaching engagements]." JA I. at 57 (emphasis added). The fees were to be shared by the Law Firm and Ward in accordance with a formula set out in that document. Ward does not contest the authenticity of his signature at the end of the document, which "approved and ratified" its terms and conditions. JA I. at 60.

Ward's September 20, 1986, separation agreement with the Law Firm did nothing to alter this arrangement. Indeed, the agreement specifically stated that "[f]ees shall be allocated on the basis set forth in the letter dated October 14, 1981, attached hereto (the 'Formula')." JA II. at 85. Further, the separation agreement specifically addressed any fees earned in the Sun Valley bankruptcy proceeding. It stated that "[t]he *portion* [of such fees] *actually received* by [the Law Firm] will be shared in accordance with the Formula." JA II. at 85 (emphasis added). Thus, this agreement provided that upon separation, Ward was to receive a portion of the Sun Valley fees actually collected by the Law Firm; it did nothing to alter the original agreement of the parties that such fees are the property of the Law Firm and not of Ward. This conclusion is underscored by the fact that all five petitions for allowance of fees filed under the Law Firm's name contained a statement that there was no agreement with any other party regarding the sharing of fees and that the fees awarded are the property of the Law Firm. Finally, Ward admitted at oral argument that the Law Firm was the entity that submitted all bills to Sun Valley for legal fees for work performed by Ward.

Furthermore, to the extent that the Law Firm's successor later waived its right to the fees arising out of its representation of Sun Valley, Ward has no right to assert a claim against Sun Valley for the work he performed in connection with the Sun Valley bankruptcy case while of counsel to the Law Firm. As part of a settlement agreement in Sun Valley's malpractice action against the successor to the Law Firm arising out of representation by the Law Firm of Sun Valley in the bankruptcy proceedings, Butzel Long, P.C., the successor firm to the Law Firm, executed an Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs. In the agreement, Butzel Long, P.C. agreed on behalf of its predecessors and successors that it would "refrain forever from attempting to collect attorney fees, expenses and costs claimed due and owing for legal representation provided to SUN VALLEY FOODS, INC." JA II. at 99-102. These agreements were signed on June 25, 1998, and September 10, 1998, and they accordingly extinguished any interest that Ward had to attempt to collect the fees because his interest was derivative through the Law Firm's property right to the fees.

Finally, although on April 19, 2005, Butzel Long, P.C., assigned to Ward "all its remaining rights, title, and interest in the petitions for attorney fees and costs filed by [the Law Firm] and still pending before [the United States Bankruptcy Court for the Eastern District of Michigan]," that assignment still does not help Ward. JA II. at 104. Indeed, it is a fundamental rule of the law of contract that the assignee stands in the shoes of the assignor, possessing the same rights and remaining subject to the same defenses as the assignor. *See, e.g.*, *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004); *Prof'l Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 577 N.W.2d 909, 914-15 (Mich. Ct. App. 1998). Thus, because the Law Firm, to

whom the attorney fees arising from Ward's work in the Sun Valley bankruptcy case belonged, agreed to not attempt collection of those fees, the Law Firm's successor had nothing collectable left to assign to Ward on April 19, 2005. Indeed, Sun Valley could point to the Law Firm's agreement not to collect, using that defense equally as effectively against Ward, per the aforesaid rule. Accordingly, this "assignment" does nothing to further Ward's case.

The above analysis demonstrates that any fees for work performed by Ward in connection with Sun Valley's bankruptcy case were solely the property of the Law Firm. The Law Firm was to distribute a portion of such fees the Law Firm actually received from Sun Valley to Ward in accordance with the formula they agreed upon when he began working of counsel. Ward never had a right to collect fees directly from Sun Valley, and any right that he had even to indirectly share in such fees extinguished when the Law Firm's successor agreed to not collect the fees, expenses, and costs.

## C. Ward's remaining claims

Ward's remaining claims require little discussion in light of the preceding analysis. They provide no support for his ultimate goal, namely to receive an award of attorney fees from Sun Valley.

### 1. Covenant not to sue vs. waiver of the claim

In his first assignment of error, Ward claims that the bankruptcy court confused the settlement agreement of the parties, and construed the Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs as a waiver of the claim itself, rather than a covenant not to sue. Ward then cites Michigan cases that distinguish the two, and argues that the bankruptcy

court ruling should be reversed because "Ward was not a party to the covenant not to sue." (Appellant's Br. 28). In response, Sun Valley asserts that Ward's arguments are inapplicable to the facts of the case, that the case law that Ward relies upon is distinguishable from this case, and that "the ultimate effect of the Law Firm's agreement not to collect its claim against Sun Valley was a complete release of its entire claim." (Appellee's Br. 18-20).

Ward's argument is unpersuasive for several reasons. First, he provides very little support for it. His discussion consists only of slightly more than one page of the argument section of his brief, and he fails to indicate why the settlement agreement should be construed as a covenant not to sue rather than a waiver of the claim. Indeed, Ward's scant analysis consists almost entirely of noting that Michigan law recognizes a distinction between a covenant not to sue and a waiver. Although he also seemingly attempts to support his argument in the statement of facts section of his brief, that information is unconvincing: it consists almost entirely of self-serving statements Ward himself made in court proceedings regarding how the agreement should be construed or statements and questions made by Bankruptcy Judge Rhodes during court proceedings, statements that Judge Rhodes later himself rejected when he ruled against Ward in his application for fees.

Second, as Sun Valley points out, the cases relied upon by Ward do nothing to help him, as they are clearly distinguishable. Indeed, the cases he cites concern a plaintiff tort victim that covenants not to sue one joint tortfeasor or another person liable to him, and who is then permitted to sue the other joint tortfeasor or person jointly liable. *See J&J Farmer Leasing, Inc. v. Citizens Ins. Co. of Am.*, 696 N.W.2d 681, 682-83 (Mich. 2005); *Boucher v. Thomsen*, 43

N.W.2d 866, 866-68 (Mich. 1950); *Thomas v. Checker Cab Co., Inc.*, 238 N.W.2d 558, 560-61, 568 (Mich. Ct. App. 1976). Ward's analogy to these cases fails because Sun Valley was never liable to both the Law Firm and Ward. Indeed, the discussion above regarding the agreements between Ward and the Law Firm and the petitions for fees filed by the Law Firm demonstrate that Sun Valley was liable to only one entity for the fees it incurred in connection with its bankruptcy proceedings: the Law Firm. Accordingly, even if the settlement agreement is construed as a covenant not to sue, the fact would not help Ward in his attempt to recover attorney fees.

**2. Ward's exclusion from the Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs**

In his second assignment of error, Ward claims that the bankruptcy court treated his exclusion from the Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs as surplusage. Ward points out that it is a "maxim" of interpretation that each part of an agreement should be given effect, he cites several cases that support his "maxim," and he asserts that even the bankruptcy judge referred to the provision as an explicit exception. In response, Sun Valley argues that the effect of the Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs was a complete release of the Law Firm's entire claim and that the claim belonged solely to the firm.

Ward's argument here is meritless. He correctly points out that a generally accepted canon of interpretation is to give effect to every provision of the document being interpreted. However, there is no canon that states that such provisions can give rise to legal rights where

- 10 -

none exist. As demonstrated above, Ward's agreements with the Law Firm as well as the petitions that the Law Firm filed in seeking its fees clearly demonstrate that the any fees derived from Ward's work while he was of counsel to the Law Firm, including the work done in the Sun Valley bankruptcy case, were the sole property of the Law Firm, not of Ward himself. Accordingly, this court will not rewrite those agreements and create a separate legal right to attorney fees in Ward where none previously existed simply because the Agreement Not to Attempt Collection of Attorney Fees, Expenses and Costs excepted Ward from its coverage.

### 3. Butzel Long's waiver of Ward's claim

In his third assignment of error, Ward claims that Butzel Long had no authority to discharge his beneficial interest in the fees claim. He supports this argument by pointing to his separation agreement, dated September 20, 1986, which he argues "plainly acknowledged [his] beneficial interest." (Appellant's Br. 27-28). Sun Valley counters by arguing that Ward's assertion contradicts the express language in his employment agreement with the Law Firm and that the separation agreement does not transfer any of the Law Firm's rights in the fees from the Sun Valley representation to Ward.

Ward again is incorrect, as he had no separate beneficial interest in the fees claim. As pointed out several times above, Ward's employment agreement with the Law Firm expressly stated that any fees earned by Ward in his practice of law were the property of the Law Firm. Also stated above, the separation agreement between the Law Firm and Ward only applied to the "portion actually received" of the fees arising from Ward's representation of Sun Valley in its bankruptcy proceeding. JA II. at 85. Therefore, although Ward is correct in his statement that

the separation agreement acknowledged his interest, it certainly did not create an independent legal right allowing Ward to collect from Sun Valley. Rather, the agreement merely recognized that if the Law Firm actually received some of its fee from Sun Valley, it would be allocated between Ward and the Law Firm in a manner consistent with the employment agreement of October 14, 1981. The employment agreement provided that the fees were the property of the Law Firm, and the separation agreement cannot be construed as altering the employment agreement. Thus, Ward had no separate beneficial interest in the fees; rather, he had only a derivative interest, to receive a portion of the fee that the Law Firm, who was the owner of the property that the fee constituted, received. Accordingly, neither does this argument help Ward.

### III. CONCLUSION

For the foregoing reasons, the panel affirms the order of the district court.