*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MAUREEN ST. CLAIR,

        Plaintiff-Appellant,

v

XPO LOGISTICS, INC., doing business as UX
ASSEMBLY & INSTALLATION,

        Defendant/Cross-Plaintiff-Appellee,

and

ICON HEALTH & FITNESS, INC.,

        Defendant-Appellee

and

CMC LOGISTICS, INC.,

        Defendant/Cross-Defendant-Appellee.

FOR PUBLICATION
December 1, 2022
9:25 a.m.

No. 356954
Macomb Circuit Court
LC No. 2019-004971-NO

MAUREEN ST. CLAIR,

        Plaintiff,

v

XPO LOGISTICS, INC., doing business as UX
ASSEMBLY & INSTALLATION,

        Defendant/Cross-Plaintiff-Appellant,

and

ICON HEALTH & FITNESS, INC.,

        Defendant,

No. 356968
Macomb Circuit Court
LC No. 2019-004971-NO

-1-

and

CMC LOGISTICS, INC.,

              Defendant/Cross-Defendant-Appellee.

_____

Before:  SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

SAWYER, P.J.

These consolidated appeals involve a personal-injury action based on an injury plaintiff, Maureen St. Clair, sustained when she fell off a treadmill and became trapped between the running tread and a wall.  In Docket No. 356954, plaintiff appeals by right Macomb Circuit Court Judge James M. Maceroni's April 1, 2021 order granting summary disposition in favor of defendant CMC Logistics, Inc. (CMC), which was the final order closing the case.  Plaintiff challenges the earlier orders, entered on May 4, 2020, and December 18, 2020, which granted summary disposition in favor of defendants, CMC, XPO Logistics, Inc. (XPO), and ICON Health & Fitness, Inc. (ICON).  In Docket No. 356968, XPO argues that the circuit court erred by determining it was not a "subscribing client" of a contract between Trucking Transport Services, LLC (CRS) and CMC, such that it was a third-party beneficiary entitled to indemnification in the event that this Court reverses the dismissal of plaintiff's complaint against XPO.  We affirm the grants of summary disposition in Docket No. 356954 and decline to address the issues in Docket No. 356968 as being moot in light of our disposition of Docket No. 356954.

I.  FACTS

In February 2015, plaintiff and her husband, Roy St. Clair, purchased a ProForm Treadmill manufactured and distributed by ICON from a retailer located in Clinton Township, Michigan. The retailer contracted with XPO (formerly Urban Express, LLC (UX)) to deliver and install sports equipment its customers purchased, including delivery and installation of the treadmill in plaintiff's home.  XPO in turn subcontracted its delivery and installation services to CMC.  Thus, a few weeks after the purchase, CMC delivered, assembled, and installed the treadmill in plaintiff's home.

On the day of the delivery and installation, plaintiff told Roy that she wanted the treadmill positioned in the living room so that she could see the television.  Consequently, Roy directed CMC's deliverymen to position the treadmill as plaintiff requested, which left less than a foot of clearance between the wall and the rear of the treadmill.  Plaintiff did not read the manual before using the treadmill, but relied on Roy, who had read the manual, to inform her how to get on the treadmill and how to start it.  Plaintiff and Roy did not discuss the manual further.  Roy "glanced" at the manual's precautions, but "figured" the deliverymen had positioned the treadmill in a safe position.

On March, 16, 2015, a few days after the treadmill was delivered, plaintiff was walking on it at a very low speed when it allegedly accelerated causing plaintiff to fall.  Because the rear of the treadmill was positioned less than a foot from a wall, plaintiff became trapped between the

wall and the treadmill. Because plaintiff was not wearing the treadmill's safety clip, the treadmill's belt continued to run resulting in severe lacerations to plaintiff's skin.

Initially, plaintiff filed a personal-injury suit in federal district court on January 11, 2018, against ICON and XPO on the basis of diversity jurisdiction. On May 18, 2018, XPO filed a notice of nonparty at fault identifying CMC as a potentially liable party. On August 9, 2018, plaintiff filed a motion for leave to file an amended complaint to add CMC as a party to the federal complaint. Several days later, on August 14, 2018, the federal district court granted the motion and, the next day, plaintiff filed an amended complaint adding CMC as a party. Four months later, on December 6, 2019, the federal district court dismissed the suit without prejudice on the basis that it no longer had diversity jurisdiction.

On the same date her federal complaint was dismissed, plaintiff filed a complaint in the circuit court alleging clams of negligence as to XPO and CMC and products liability as to ICON. Specifically, in Count I, plaintiff sought to hold XPO vicariously liable for the acts of CMC in negligently installing the treadmill; in Count II, plaintiff alleged negligence and gross negligence as to ICON, predicated on design defect, failure to warn, and breach of express and implied warranties that the treadmill was fit for its intended use; and, in Count III, plaintiff alleged CMC was both negligent and grossly negligent in setting-up the treadmill without the proper clearances and, that as a result, plaintiff suffered injuries.

All defendants and CMC, as cross-defendant, eventually filed motions for summary disposition. CMC moved for summary disposition first under MCR 2.116(C)(7) on the basis that the three-year limitations period barred plaintiff's suit. CMC explained that plaintiff's injury occurred on March 16, 2015, and, under the three-year limitations period, plaintiff had until March 16, 2018, to file suit. However, plaintiff did not file suit until December 2019 and, thus, her claim was barred by the statute of limitations. Regarding statutory tolling under MCL 600.5856, CMC asserted that tolling did not apply and, even if it did, it did not render plaintiff's suit timely.

Plaintiff responded by arguing that her complaint was timely under Michigan law. Plaintiff explained that, under MCL 600.2957(2), her amended complaint in federal court related back to her original complaint in that suit. This meant, according to plaintiff, that her state-court complaint is timely and CMC is precluded from raising the statute of limitations as a defense. Plaintiff further posited that the filing of the federal lawsuit tolled the limitations period until that lawsuit was no longer pending, meaning that tolling applies and the limitations period did not expire.

Ultimately, the circuit court agreed with CMC. The court rejected plaintiff's claim that under the relation-back provision, MCL 600.2957(2), her state-court complaint against CMC related all the way back to the original complaint in the federal court. The circuit court reasoned as follows:

> At the heart of Plaintiff's argument is the assumption that the invocation of MCL 600.2957(2) in the federal case extends to control this case. This assumption is incorrect. Under MCL 600.2957(2), nonparty claims added in "an amended pleading" relate back to the "time of the filing of the original action." Nothing in the plain language of the statute indicates that the statute applies where, just as here, a prior added nonparty is named as a defendant in the original complaint in a

-3-

separate case. And Plaintiff has not provided any caselaw to support this interpretation. Rather, the language in subsection (2) shows that the statute only applies to one case at a time (i.e., the same case where the claims against the nonparty were added after the nonparty has been identified). Specifically, the use of the phrase "amended pleading" in the first sentence in subsection (2) clearly contemplates a prior original pleading (such as the original complaint) was filed in the same case in which the amended pleading is filed. Only the nonparty claims added in the amended pleading in the same case as the original pleading can relate back to "the filing of the original action" under MCL 600.2957(2).

Put simply, MCL 600.2957(2) does not allow for the relation back of claims or tolling where a new lawsuit is filed. Nor does the statutory tolling provision in MCL 600.5[8]56 incorporate the nonparty relation back doctrine in MCL 600.2957(2) to extend the tolling period back to the filing of the original action in a prior, separate case. Accordingly, consistent with the plain language of MCL 600.2957(2) and MCL 600.5[8]56, Plaintiff's amended complaint in the federal lawsuit that added claims against CMC as a nonparty did not extend the tolling period for the statute of limitations in this case.

Accordingly, the circuit court ruled that plaintiff's claims against CMC were barred by the three-year period of limitations and dismissed plaintiff's claims against CMC with prejudice.

XPO also moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff did come forth with facts to establish that XPO was negligent. It also cited plaintiff's failure to use the safety clip. Moreover, it argued that CMC was an independent contractor and XPO was not vicariously liable for CMC's negligence. The trial court concluded that there was no genuine issue of material fact that CMC was an independent contractor and that XPO was not liable for any negligence by CMC.

Finally, ICON moved for summary judgment, raising a number of arguments. The trial court granted summary disposition in favor of ICON, finding that the defense of product misuse was dispositive.

## II. DISCUSSION

### A. CMC

Plaintiff argued in the proceedings below and on appeal that MCL 600.2957(2) applied between separate cases and that MCL 600.2957(2) and MCL 600.5856 together operated to save her suit [CMC MSD resp, pp 10-11]. This issue is preserved for appeal. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) (indicating that preservation requirements are met if a party raises a claim, even if the lower court fails to address it). Plaintiff, however, did not raise any argument related to equitable tolling; and, therefore, this issue is not preserved for appellate review. See *id*.

For the reasons we discuss *infra,* we conclude these arguments are incorrect and we affirm this aspect of the trial court's decision.

1. Standard of Review

This Court reviews de novo whether a motion for summary disposition based on MCR 2.116(C)(7) is properly granted. *Diehl v Danuloff*, 242 Mich App 120, 122; 618 NW2d 83 (2000). With respect to a statute-of-limitations defense, this Court explained in *Kincaid v Cardwell*, 300 Mich App 513, 522-523; 834 NW2d 122 (2013):

> Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. See *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. *Tumey v Detroit*, 316 Mich 400, 410-411; 25 NW2d 571 (1947). In determining whether a plaintiff's claim is barred because of immunity granted by law, the reviewing court will accept the allegations stated in the plaintiff's complaint as true unless contradicted by documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999)[, reh den 461 Mich 1205 (1999)]. Although generally not required to do so, see MCR 2.116(G)(3), a party moving for summary disposition under MCR 2.116(C)(7) may support the motion with affidavits, depositions, admissions, or other admissible documentary evidence, which the reviewing court must consider, *Maiden*, 461 Mich at 119, citing MCR 2.116(G)(5). The reviewing court must view the pleadings and supporting evidence in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party has immunity. *Tryc v Mich Veterans' Facility*, 451 Mich 129, 134; 545 NW2d 642 (1996). If there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine. [Quotation marks omitted.]

Additionally, issues of statutory interpretation are reviewed de novo. *Stenzel v Best Buy Co*, 320 Mich App 262, 274; 906 NW2d 801 (2017), aff'd 503 Mich 199 (2019). When interpreting statutory language, this Court's goal is to discern the Legislature's intent. *Cook v Dep't of Treasury*, 229 Mich App 653, 658-659; 583 NW2d 696 (1998). The best indicator of that intent is the language used. *Ferguson v City of Lincoln Park*, 264 Mich App 93, 95-96; 694 NW2d 61 (2004). If the language is clear and unambiguous, then it must be applied as written. *Id*. "A necessary corollary of this principle is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Iliades v Dieffenbacher North America Inc*, 501 Mich 326, 336; 915 NW2d 338 (2018) (quotation marks omitted). Additionally, courts interpreting statutory language "must give effect to every word, phrase, and clause in a statute, and, in particular, consider the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme, to avoid rendering any part of the statute nugatory or surplusage." *Id*.

Finally, unpreserved issues raised for the first time on appeal may be deemed waived. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). However, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented[.]"

*Id*. This Court may review such unpreserved claims for plain error affecting substantial rights. *Demski v Petlick*, 309 Mich App 404, 463; 873 NW2d 596 (2015).

2. Discussion

Plaintiff first argues that the circuit court erred by granting summary disposition in favor of CMC on the basis that the three-year statutory period of limitations barred plaintiff's complaint. According to plaintiff, the relation-back provision, MCL 600.2957(2), and the tolling provision, MCL 600.5856, collectively applied to render plaintiff's complaint timely.

a. Relation-Back Provision

The statutory period of limitations for negligence actions is three years. MCL 600.5805(2). The incident causing plaintiff's injury occurred on March 16, 2015. Consequently, the limitations period expired on March 16, 2018. Plaintiff brought her federal suit within this timeframe, suing ICON and XPO on January 11, 2018; CMC was identified as a nonparty at fault and plaintiff filed an amended complaint adding CMC as a party on August 15, 2018. Because CMC was identified as a nonparty at fault in federal court, MCL 600.2957(2) applied, such that the period of limitations did not bar her suit against CMC in the federal suit. The federal suit was dismissed for lack of diversity jurisdiction on December 6, 2019. On that same date, plaintiff filed her complaint against CMC, XPO, and ICON in this case. Consequently, plaintiff's state-court complaint against CMC was outside the limitations period. The circuit court granted summary disposition in favor of CMC on the basis that the statute of limitations barred plaintiff's claim against CMC.

Plainly, given that the limitations period for negligence actions expired on March 16, 2018, plaintiff's complaint against CMC filed on December 6, 2019, was untimely.[1] Plaintiff, however, argues that the limitations period should not bar her complaint because, under MCL 600.2957(2), her state-court complaint as to CMC relates back to the original filing of her federal complaint on January 11, 2018.

Known as the relation-back provision, MCL 600.2957(2) provides:

Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of limitation at the time of the filing of the original action.

As this Court explained in *Stenzel*, the first sentence reflects that the

---

[1] Because plaintiff raises a negligence claim against XPO, it appears that plaintiff's complaint against XPO would also be untimely. However, the circuit court did not dismiss the claim against XPO on this basis and, thus, this analysis is limited to CMC.

procedure for a party to amend a pleading in order to add an identified nonparty at fault to a pending lawsuit entails the filing of a motion for leave to amend the pleading within 91 days following the identification, which motion must be granted by the trial court without exception. [*Stenzel*, 320 Mich App at 269.]

The second sentence of MCL 600.2957(2) dictates that "any amendment of a pleading to add a cause of action against an identified nonparty at fault relates back to the date of the filing of the original action for purposes of assessing whether the applicable period of limitations has expired." *Id.*

No caselaw supports plaintiff's position that the relation-back provision applies to a second subsequent lawsuit; a fact acknowledged by plaintiff. Plaintiff argues the second sentence of MCL 600.2957(2) saves the claim against CMC because CMC was added to the federal suit after being identified as a nonparty at fault. That sentence provides that such a claim is not barred by the period of limitations unless it would have been barred at the time of the filing of the original action. Plaintiff asserts that the Legislature's use of the term "cause of action" in the statute indicates that the Legislature did not intend to limit the relation-back doctrine to a single case, as the circuit court held. Specifically, plaintiff relies on the language of the second sentence of MCL 600.2957(2), providing, "**A cause of action** added under this subsection is not barred by a period of limitation unless the **cause of action** would have been barred by a period of limitation at the time of the filing of the original action." Plaintiff argues that the circuit court erroneously focused on the first sentence's reference to an "amended pleading" as contemplating a prior original pleading in order to conclude that the statute only applies to "one case at a time" and that the more specific language of the second sentence controls. According to plaintiff, had the Legislature intended to limit application of MCL 600.2957(2) to a single case, it could have done so by including limiting language.

We conclude plaintiff's interpretation wrongly reads the phrase "cause of action" in isolation, contrary to the rules of statutory construction, and equates that phrase with separate lawsuits despite the text indicating another meaning. See *Iliades*, 501 Mich at 336. Moreover, simply because the statute uses the phrase "cause of action" does not mean that the relation-back provision applies to multiple lawsuits. Rather, when read in context and as a whole, as statutory language must be read, it is plain that the text of the statute envisions application of the relation-back rule only in a single lawsuit. See *id.* An explication of the statutory language supports this conclusion.

First, the introductory phrase of the first sentence, "[u]pon motion of a party within 91 days after identification of nonparty," necessarily contemplates a pending lawsuit because the filing of a motion implies a lawsuit. MCL 600.2957(2). The remainder of the first sentence mandates that a circuit court, upon a timely motion identifying the nonparty, grant the moving party leave to "file and serve an amended pleading alleging 1 or more causes of action against the nonparty." MCL 600.2957(2). When read as a whole, the first sentence indicates that a triggering event in a pending lawsuit—the filing of a motion identifying a nonparty—mandates that the circuit court grant the moving party leave to file an "amended pleading" alleging additional causes of action against the nonparty. The phrase "cause of action" in this context, then, does not mean a separate lawsuit, given that leave to file an "amended pleading" is granted, as opposed to mandating the initiation of an entirely new suit. Consequently, "cause of action" as used in the statute refers to a "legal

theory" based on the operative facts from which relief may be obtained. See *Black's Law Dictionary* (10th ed) (defining "cause of action"). As such, when the first sentence is read as a whole, the text plainly indicates that all these events—filing of a nonparty at-fault notice and the filing of an amended pleading—occur in a single suit. Nothing in the language of the first sentence indicates otherwise.

Additionally, the next sentence of MCL 600.2957(2), on which plaintiff primarily relies, refers back to the first sentence, by stating, "[a] cause of action *added under this subsection . . . .*" (Emphasis added.) Thus, the "cause of action" referenced in the second sentence is one that is added pursuant to the triggering events of the first sentence. As with the first sentence of MCL 600.2957(2), nothing in the second sentence suggests that its relation-back language applies between multiple separate lawsuits. Instead, the measuring of the limitations period in a "cause of action added" is taken from the filing of the "original action," which likewise contemplates a single suit. And like the first sentence of the statute, that the second sentence uses the term "cause of action" is not, when read in context, a reference to separate lawsuits, but to a set of operative facts that form the basis for holding the nonparty liable. Accordingly, plaintiff's argument that MCL 600.2957(2) applies between separate lawsuits is not supported by the text of the statute. Accordingly, the circuit court properly construed the relation-back provision as applying to a single suit.

b. Tolling Provision

Plaintiff next argues that the tolling statute, MCL 600.5856, tolled the period of limitations from the time of her initially filed federal complaint until the time that the federal court dismissed her suit without prejudice. Plaintiff contends that, even though CMC was not a party to the federal suit until August 15, 2018, the relation-back provision applied such that tolling should be measured from the time of the original complaint.

Plaintiff's argument is unpersuasive. Plaintiff cites no authority to support her construction of the statutes. Plaintiff also fails to explicate the statutory language or highlight any statutory text in either the tolling provision, MCL 600.5856, or the relation-back provision, MCL 600.2957(2), that buttresses her claim that the period of limitations was tolled as to CMC from the date the original federal complaint was filed. Absent citation to authority and further elaboration of her claims, this Court may deem plaintiff's argument abandoned. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

In any case, MCL 600.5856(a) provides, in relevant part, that the period of limitations is tolled "[a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules." Nothing in this language suggests that the measuring of the tolling period for a nonparty added later in litigation should be measured from the date of the original complaint. Plaintiff's construction would require this Court to add language to the tolling statute that does not exist, contrary to the rules of statutory construction. See *Iliades*, 501 Mich at 336. While the relation-back provision saves a cause of action added against a nonparty if it would have been timely at the time of the original action, the

tolling provision makes no reference to starting the tolling period at the filing of the original complaint when a cause of action against a nonparty is added. The circuit did not err by concluding that the tolling provision did not operate to save plaintiff's claim against CMC.[2]

## c. Equitable Tolling

Plaintiff also argues that this Court should apply the doctrine of equitable tolling to her claim against CMC. Plaintiff did not raise this claim before the circuit court, and, thus, it is not properly before this Court. *Smith*, 269 Mich App at 427.

Even if we were to substantively consider this argument, application of equitable tolling is not warranted. As the Michigan Supreme Court has made clear, equitable tolling "is limited to those circumstances when the courts themselves have created confusion[,] such as when a plaintiff is forced to navigate through the preexisting jumble of convoluted caselaw[.]" *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 406; 738 NW2d 664 (2007), reh den 480 Mich 1202 (2007) (quotation marks omitted). Plaintiff's failure to file her claim within the limitations period was not caused by any confusion created by the courts. Rather, plaintiff waited two months before the limitations period expired and only then filed her suit in federal court. When that suit was dismissed and plaintiff refiled her claim in state court, it was rendered untimely because it was filed outside the limitations period. Equitable tolling does not apply under these circumstances.

In summary, although CMC was identified as a nonparty in the prior federal lawsuit and plaintiff's federal complaint was timely as to CMC under MCL 600.2957(2), the relation-back provision of MCL 600.2957(2) is not applicable between separate lawsuits such that it renders plaintiff's state-court complaint against CMC timely. Because plaintiff in the instant lawsuit filed her complaint against CMC outside the limitations period, plaintiff's complaint was untimely and the circuit court did not err by dismissing it under MCR 2.116(C)(7). The tolling provision does not change this outcome and equitable tolling does not apply.

## B. XPO

Plaintiff argues that the trial court erred by finding that XPO could not be held vicariously liable for CMC's negligence because CMC was an independent contractor. Plaintiff argues that the trial court failed to consider evidence such as XPO's dispatching orders to CMC and CMC installers wearing XPO uniforms. We are not convinced that the trial court erred.

---

[2] Plaintiff refers also to the *Erie* doctrine, see *Erie R Co v Tompkins*, 304 US 64; 58 S Ct 817; 82 L Ed 1188 (1938), arguing that if plaintiff's claims were timely in federal court, they should also be deemed timely in state court. Plaintiff ignores that the passage of time would also make her claims untimely in a new suit in federal court. And as CMC points out, plaintiff does not cite any on-point authority that a plaintiff is allowed to bootstrap the timeliness of one lawsuit that is dismissed onto a second untimely lawsuit.

1.  Preservation.

This issue was raised in the trial court and is therefore preserved for appellate review.

2.  Discussion

a.  Vicarious liability

Generally, "an employer of an independent contractor is not liable for the contractor's negligence." *Reeves v Kmart Corp*, 229 Mich App 466, 472; 582 NW2d 841 (1998. "The rationale for this rule is that an independent contractor is not subject to the control of the employer, and therefore the employer should not be held vicariously liable for actions outside its control." *Campbell v Kovich*, 273 Mich App 227, 233-234; 731 NW2d 112 (2006) (quotation marks and citation omitted). However, Michigan courts have recognized that "[a] party may be liable for the negligence of an independent contractor where the party retains and exercises control over the contractor[.]" *Reeves*, 229 Mich App at 472. Mainly,

> [t]he test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work: If the employer of a person or business ostensibly labeled an "independent contractor" retains control over the method of the work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant. [*Campbell*, 273 Mich App at 234 (quotation marks and citations omitted).]

"In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability." *Laster v Henry Ford Health Sys*, 316 Mich App 726, 735; 892 NW2d 442 (2016). Further, "not just any type of control will suffice to transform an independent contractor into an employee or agent; rather, the control must relate to the method of the work being done." *Id*. at 736.

We agree with the trial court that plaintiff failed to provide evidence that XPO controlled CMC's methods of delivery and installation. Instead, a review of the record supports that plaintiff acted as an independent contractor over which XPO exercised no control. CMC was a one-person operation owned by Daniel Chadwick and run out of his home. CMC did not have any employees, rather its delivery drivers were independent contractors [Chadwick dep, p 10]. Chadwick directed his contractors to "go by the instructions and the manual" when assembling items. In terms of obtaining jobs, CMC contracted with multiple entities, like XPO, to deliver and install products in customers' homes. CMC would go online to these companies' websites to see which deliveries had been assigned to CMC. CMC would then create a schedule of deliveries for the day on the basis of the dispatches it had received. CMC used Chadwick's unmarked pickup truck and a box trailer for the deliveries and, according to Chadwick, XPO did not have the right to tell CMC how to do its job. Absent any major issues, the only contact between CMC and XPO before a delivery was a bill of lading that XPO provided. Given these circumstances, no factual dispute exists that XPO did not have the power or ability to control CMC's method of completing its delivery and assembly services. Consequently, the circuit court did not err by concluding that no question of fact existed that CMC did not act as XPO's agent for purposes of vicariously liability.

Plaintiff argues that a genuine issue of material fact exists based upon CMC's employees wearing XPO's uniforms, thereby holding themselves out as XPO employees. Plaintiff analogizes this to the decision in *Thomas v Checker Cab Co, Inc,* 66 Mich App 152; 238 NW2d 558 (1975).

In *Checker Cab Co,* 66 Mich App at 158, this Court adopted a rule that, for purposes of vicarious tort liability, "evidence establishing that [a] defendant company's name and colors are upon the taxicab creates a prima facie case that [the] defendant had custody and control of that cab, whether the company owned it or not." In that case, the independently owned cabs bore identifying colors and insignia of Checker Cabs and they received dispatches via radio through a switchboard system that Checker Cabs maintained. *Id.* at 155. On the basis of those facts, this Court held that "such proof that Checker Cab Company holds itself out to the public as having control over the operation of 'Checker Cabs' was sufficient to constitute prima facie showing of an employer-employee relationship between Checker Cab Company and the cab drivers." *Id.* at 156.

*Checker Cab Co* is distinguishable because, in that case, there was no dispute that the cabs bore Checker Cab Company's name and colors. In this matter, there is no evidence on the record that CMC's deliverymen actually wore XPO's uniforms on the day of the delivery and Chadwick testified that CMC, at the time of the instant delivery, used his unmarked pickup truck and trailer. Indeed, the portion of the transcript plaintiff cites on appeal in support of the proposition that the deliverymen held themselves out as employees of XPO does not definitively establish that the deliverymen were wearing XPO uniforms on the day of the delivery; rather, XPO's director of operations merely testified that the independent contractor deliverymen it hired wore XPO uniforms. The director of operations did not know which specific CMC contractors made the delivery on the day in question, and did not testify that those deliverymen wore XPO uniforms. Chadwick, however, testified that CMC's deliverymen wore blue uniforms with CMC logos and Roy testified that the deliverymen were wearing blue jackets when the treadmill was delivered. Whether CMC deliverymen wore XPO uniforms on the day in question is at best speculative on the basis of the present record. See *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994) ("[A] conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference."). Such conjecture is insufficient to make-out a prima facie showing of a principal-agent relationship. See *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016) ("Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient."). *Checker Cab Co*, therefore, is distinguishable and does not direct the outcome of this case.

Relatedly, plaintiff argues that XPO should be held vicariously liable under a theory of agency by estoppel. But, as XPO points out, plaintiff did not raise this theory of liability in the circuit court. Because plaintiff is raising it for the first time on appeal, we decline to review it. *Smith*, 269 Mich App at 427.

## 2. Direct Negligence.

Plaintiff next argues that the circuit court erred by dismissing her claim of negligence against XPO.[3] Plaintiff explains that XPO breached its duty to plaintiff by installing the treadmill in violation of the minimum safety clearances and that plaintiff's failure to use the safety clip is merely an issue of comparative negligence.

"[I]n order to state a negligence claim on which relief may be granted, plaintiffs must prove (1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v Dow Chem Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005). With regard to the first element, "the existence of duty is a question of law for the court." *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995). "Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465; 683 NW2d 587 (2004) (citation omitted). "If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Id*.

In this matter, the retailer contracted with XPO for services related to delivery and assembly of its equipment. XPO in turn entered into a contract with CMC for it to undertake XPO's contractual delivery duties. Consequently, when Roy purchased the treadmill from the retailer and arranged for delivery and assembly at the time of purchase, CMC was contracted with XPO to make the delivery and install the equipment. The parties do not dispute that CMC's deliverymen delivered and installed the treadmill, placing it without adequate safety clearance at Roy's request.

Under these circumstances, there is no factual dispute that XPO had no contractual relationship with plaintiff, and undertook no direct act with respect to plaintiff, from which a duty to act in a nonnegligent manner arose. See *id*. In short, plaintiff fails to demonstrate any legal relationship between plaintiff and XPO by which XPO owed plaintiff a duty. While plaintiff asserts otherwise, her argument is cursory and without reference to any factual support in the record. See *Yee*, 251 Mich App at 406 (indicating that cursory, undeveloped claims of error, without support in the record or citation to legal authority, may be deemed abandoned). Accordingly, plaintiff failed to demonstrate that a question of fact existed whether XPO owed plaintiff a duty under the present circumstances and, thus, plaintiff cannot sustain a direct negligence claim against XPO.

## C. ICON

Plaintiff next argues that the trial court erred by dismissing the products-liability claim against ICON because its misuse defense presented questions of fact regarding whether it knew, or should have known, the treadmill would be used without the safety clip. Plaintiff argues that

---

[3] Plaintiff raises the same claim with respect to CMC. However, plaintiff's claim against CMC was raised outside the limitations period and was properly dismissed on the basis of the statute of limitations as discussed in Issue I.

we should find that a question of fact exists whether plaintiff's failure to wear the safety clip while operating the treadmill at its lowest speed was a reasonably foreseeable misuse of the treadmill. ICON's own website shows the treadmill being used at high-running speeds without the clip, reflecting that ICON knew the treadmill would be used without the clip. Plaintiff further argues that there was sufficient evidence to support her claim based upon a failure to warn.

### 1. Standard of Review.

In addition to the standard of review for summary disposition motions as discussed above, whether a manufacturer is entitled to the statutory defense of misuse is a question for the court, see MCL 600.2947(2), the factual findings underpinning the circuit court's misuse determination are reviewed for clear error. See *Heaton v Benton Constr Co*, 286 Mich App 528, 534; 780 NW2d 618 (2009) (recognizing that a trial court's factual findings related to a products-liability sophisticated-user defense are reviewed for clear error).

### 2. Discussion.

Plaintiff has failed to demonstrate that ICON is not entitled to the statutory defense of misuse, which bars all of plaintiff's products-liability claims.

### a. Misuse Defense to Products Liability

Plaintiff argues that the circuit court erred by granting summary disposition in favor of ICON. Plaintiff contends that the circuit court erred by finding ICON's misuse defense dispositive, such that it declined to consider plaintiff's products-liability claims. According to plaintiff, the circuit court erred in its application of the statutory misuse defense, and a question of fact exists whether plaintiff's failure to wear the safety clip was a reasonably foreseeable misuse of the treadmill.[4]

Michigan's 1995 tort reform efforts operated to limit manufacturer liability arising from product misuse. Specifically, MCL 600.2947(2) provides:

> A manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable. Whether there was misuse of a product and whether misuse was reasonably foreseeable are legal issues to be resolved by the court.

In *Iliades*, 501 Mich at 337, the Michigan Supreme Court construed this statute as setting forth a two-part test. Specifically, the Court determined that "in order for a manufacturer to be liable for the misuse of its product, a court must first decide whether there was misuse of the product, and,

---

[4] As noted in the Standard of Review, whether misuse occurred is a question for the court and its factual findings should be reviewed for clear error. Thus, plaintiff's argument applying MCR 2.116(C)(10) standards is misplaced.

if so, the court must then decide whether the particular misuse was reasonably foreseeable by the manufacturer." *Id*.

Regarding the first part of the test, MCL 600.2945(e) defines "misuse" as "use of a product in a materially different manner than the product's intended use." This provision defines "misuse" to include: (1) "uses inconsistent with the specifications and standards applicable to the product," (2) "uses contrary to a warning or instruction provided by the manufacturer, seller, or another person possessing knowledge or training regarding the use or maintenance of the product," and (3) "uses other than those for which the product would be considered suitable by a reasonably prudent person in the same or similar circumstances." MCL 600.2945(e).

The Supreme Court described the second part of the test, the foreseeability analysis, as follows:

> [F]oreseeability depends on whether a reasonable person "could anticipate that a given event might occur under certain conditions." When dealing with the foreseeability of a product's misuse in particular, the crucial inquiry is whether, at the time the product was manufactured, the manufacturer was aware, or should have been aware, of that misuse. Whether a manufacturer should have known of a particular misuse may depend on whether that misuse was a common practice, or if foreseeability was inherent in the product. [*Iliades*, 501 Mich at 338-339 (footnotes omitted).]

Relevant considerations include, *inter alia*, whether the misuse was a common practice of which the manufacturer was aware, or should have been aware, and whether the manufacturer had actual knowledge of the particular misuse. *Id*. at 338 n 25 & 26.

Regarding the first part of the test, plaintiff does not contest that misuse occurred and recognizes, without analysis, that she did not use the safety clip. The circuit court, however, found that plaintiff's particular misuse included plaintiff's failure to (1) read the safety manual, (2) use the safety clip while operating the treadmill at a low speed, and (3) position the treadmill with adequate safety clearance. Given that plaintiff does not challenge the circuit court's findings in this regard and that the record does not dispute those findings, we deem the misuse that occurred to be that determined by the circuit court. This conclusion is significant because the second part of the test requires this Court to consider whether the *particular* misuse that occurred was reasonably foreseeable, i.e., whether, at the time of manufacture, ICON was aware, or should have been aware, that a person would use the treadmill without reading the safety manual, without using the safety clip, and while the rear of treadmill was placed within a foot of a wall. See *id*. at 338-339.

With respect to the reasonable foreseeability analysis, plaintiff only addresses whether ICON was aware of, or should have been aware of, use of the treadmill without the clip. The circuit court found, however, that plaintiff's misuse of the treadmill—failure to use the clip, read the manual, and position the treadmill with adequate clearance—was not reasonably foreseeable, noting that absent from the record was any evidence that ICON actually knew that users used the treadmill without a safety clip or that users would not read the manual. The fact that plaintiff's foreseeability argument does not consider the particular misuse found by the circuit court renders

-14-

her assertions that the misuse was foreseeable inherently and fatally flawed. See *id*. at 340 (recognizing that, for purposes of the foreseeability analysis, the particular misuse must be considered, otherwise, whether the misuse was reasonably foreseeable cannot be properly assessed). Because plaintiff makes no argument that the particular misuse that occurred was not reasonably foreseeable, plaintiff fails to challenge the circuit court's dispositive rationale supporting its decision and, thus, this Court need not even consider the relief requested. *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020); *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004) (recognizing that when an appellant fails to address a circuit court's actual decision, this Court need not consider granting the relief requested).

### b. Failure to Warn.

Plaintiff further argues that she has a viable claim based upon a failure to warn. But, because ICON is entitled to the defense of misuse, it is not necessary to consider the merits of plaintiff's products-liability claims.

### D. XPO'S CROSS-APPEAL

In light of our disposition of plaintiff's appeal, the issues raised in XPO's cross-appeal are moot and we decline to address them.

### III. CONCLUSION

For the reasons stated above, we conclude that the trial court properly granted summary disposition in favor of defendants.

Docket No. 356954 is affirmed; Docket No. 356968 is dismissed as moot. Defendants may tax costs.

/s/ David H. Sawyer
/s/ James Robert Redford